UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| LAMONICA TOWNSEND, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-1065 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) or supplemental security income (SSI) benefits. On June 14, 2006, plaintiff filed her applications for benefits alleging a January 1, 2006 onset of disability.[1] (A.R. 112-19). Plaintiff's claims for benefits were denied on initial review. (A.R. 71-79). On April 8, 2009, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 27-67). On June 5, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 15-26). On September 20, 2010, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n. 5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, July 2006 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits.  Plaintiff argues that the ALJ's decision should be overturned on the following grounds:

1.     "There is no substantial evidence to support the Commissioner's denial of benefit[s];"

2.     The Commissioner failed to "appropriately consider mental disorders including a pain disorder affecting [plaintiff's] medical condition[;]" and

3.     The Commissioner "failed to consider the overwhelming evidence from treaters and examiners alike."

(Statement of Errors, Plf. Brief at 3, docket # 10).  Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision.  I recommend that the Commissioner's decision be affirmed.


**<u>Standard of Review</u>**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, No. 11-2304, __ F.3d __, 2012 WL 3871353, at * 4 (6th Cir. Sept. 7, 2012); *Walters*

-2-

*v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from June 1, 2006, through the date of the ALJ's decision. (A.R. 17). Plaintiff performed substantial gainful activity through June 30, 2006, and thus, was not eligible to receive DIB and SSI benefits at any time on or before that date. (A.R. 17). Plaintiff had not engaged in

substantial gainful activity on and after July 1, 2006. (A.R. 18). The ALJ found that plaintiff had

the following severe impairments: "headaches, back pain, depression and cognitive disorder." (A.R.

18). Plaintiff did not have an impairment or combination of impairments which met or equaled the

requirements of the listing of impairments. (A.R. 18). The ALJ found that plaintiff retained the

residual functional capacity (RFC) for a limited range of light work:

> The claimant has the residual functional capacity to lift twenty pounds occasionally and ten
> pounds frequently; to stand and sit six hours each in an eight hour work day; occasionally
> climb, balance, kneel, stoop, crouch, and crawl; frequently rather than constantly, be exposed
> to extremes [of] cold, humidity, wetness, and hazards such as heights and moving parts; can
> perform simple, routine work with occasional changes in a routine work setting, and
> occasional interactions with co-workers, supervisors, and the public.

(A.R. 20). The ALJ found that plaintiff's testimony regarding her subjective limitations was not

fully credible. (A.R. 20-25). The ALJ found that plaintiff was unable to perform her past relevant

work. (A.R. 25). Plaintiff was 35-years-old on July 1, 2006, and 38-years-old as of the date of the

ALJ's decision. Thus, at all times relevant to her claims for DIB and SSI benefits, plaintiff was

classified as a younger individual. (A.R. 25). Plaintiff has at least a high-school education and is

able to communicate in English. (A.R. 25). The transferability of jobs skills was not material to a

disability determination. (A.R. 25). The ALJ then turned to the testimony of a vocational expert

(VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC,

education, and work experience, the VE testified that there were approximately 37,000 jobs in the

State of Michigan that the hypothetical person would be capable of performing. (A.R. 60-62). The

ALJ found that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-

Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled.[2] (A.R. 25-26).

_____

[2]The record documents plaintiff's history of alcohol abuse and her positive drug test for
opiates and cocaine which she attributed to "being around when her cousin smoked crack." (A.R.

## 1.

Plaintiff's brief relies on evidence that was never presented to the ALJ.  (Plf. Brief at 7, 8, 12, 14).  This is patently improper.  It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review.   This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ.  The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ.  *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001);  *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence

---

235, 241, 247, 254, 446, 452, 457, 477, 479, 481-82, 486, 520, 556).  On February 20, 2008, a social worker noted: "Client denies any use of alcohol or cocaine, though records indicate she has been dishonest about use in the past."  (A.R. 477).  "Client has a long history of substance abuse, though she remains highly guarded about her history.  Client has been provided substance abuse treatment and has demonstrated clear med-seeking behavior around the Vicodin and Valium which she has been taking for several years."  (A.R. 485; *see* A.R. 491-93).

Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction.  *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004).  The claimant bears the burden of demonstrating that drug and alcohol addiction is not a contributing factor to his disability.  *See Cage v. Commissioner*, No. 09-4530-cv, __ F.3d __, 2012 WL 3538264, at * 4-6 (2d Cir. Aug. 17, 2012); *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004).  Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability.

supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ."). The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

"A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence she now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. Plaintiff has not addressed, much less carried her burden. *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84. The records from Community Mental Health (CMH) dated June 27, 2009 (A.R. 589-95), and a letter addressed to a legal assistant in plaintiff's attorney's office from a counselor at the Women's Center

of Greater Lansing dated December 16, 2009 (A.R. 597), are new because they were generated after the ALJ's decision.  *See Ferguson*, 628 F.3d at 276.

"Good cause" is not established solely because the new evidence was not generated until after the ALJ's decision.  *Courter v. Commissioner*, No. 10-6119, 2012 WL 1592750, at * 11 (6th Cir. May 7, 2012).  The Sixth Circuit has taken a "harder line."  *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).  The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision.  *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 485.  Plaintiff has not explained why this evidence was not obtained earlier and presented to the ALJ before he rendered his decision.  I find that plaintiff has not carried her burden of demonstrating good cause.

In order to establish materiality, plaintiff must show that introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion.  *See Ferguson*, 628 F.3d at 276.  The records from CMH reveal that plaintiff had "been drinking to the point of passing out."  (A.R. 590-91).  She "was at times cagey in answering questions, and some of her answers were inconsistent with either previous information she provided [or] with information her uncle provided."  (A.R. 592).  She was oriented in all three spheres and there was no evidence of thought disorder, hallucinations or delusions.   (A.R. 592).   Plaintiff was diagnosed with polysubstance dependence and a mood disorder.  (A.R. 594).  The CMH records would not have persuaded the ALJ to reach a different conclusion on plaintiff's claims for DIB and SSI benefits.  They would have further undermined the credibility of plaintiff's statements that she was not abusing drugs or alcohol.

Counselor Abdullah's letter to the paralegal expresses his disagreement with the ALJ's decision and lists plaintiff's subjective complaints.  The letter concludes as follows: "Finally, the denial letter spoke about suspicions of substance use, but I have serious doubts about it because she has no money, and all of the times I have seen her, she never appeared to be intoxicated in any way." (A.R. 597).  Mr. Abdullah apparently lacked access to plaintiff's then-recent CMH records documenting her alcohol abuse (A.R. 590-91) and the records presented to the ALJ documenting plaintiff's substance abuse.  I find that the counselor's letter expressing disagreement with the ALJ's decision would not have reasonably persuaded the Commissioner to reach a different decision on the issue of whether plaintiff was disabled on or before June 5, 2009.

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted.  I recommend that plaintiff's motion for a sentence six remand be denied. Plaintiff's arguments must be evaluated on the record presented to the ALJ.

**2.**

Plaintiff argues that there is "no substantial evidence to support the Commissioner's denial of benefits." (Plf. Brief at 10-13).  She presents no coherent argument under this heading and cites no supporting legal authority. (*Id.*).  Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012);*Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007).

Assuming that the issue had not been waived, it is meritless.  Plaintiff states that the ALJ "pick[ed] isolated statements out of the records." (Plf. Brief at 10).  An argument that the ALJ mischaracterized or "cherry-picked" the administrative record is frequently made and seldom

successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009). The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence, deciding questions of credibility, or substituting the court's judgment for that of the ALJ. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Plaintiff complains that the ALJ "suggests malingering," then argues that the ALJ's finding is not supported by the medical record. (Plf. Brief at 11). This argument is frivolous. The administrative record is replete with evidence of plaintiff's malingering in an effort to obtain social security benefits. (*See e.g.*, A.R. 451, 466, 472, 477, 479, 480, 481, 485, 486, 493). I find that the ALJ did not "mischaracterize" or "cherry pick" this administrative record.

Plaintiff cites fragments of evidence which she believes support her claims for DIB and SSI benefits. (Plf. Brief at 12). This falls far short of satisfying her burden on appeal. It is not enough to point out evidence on which the ALJ could have based a decision in her favor. "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d at 477.

**3.**

Plaintiff argues that the ALJ failed to "appropriately consider mental disorders including a pain disorder affecting [plaintiff's] medical condition." (Plf. Brief at 13). The ALJ found at step 2 of the sequential analysis[3] that plaintiff had the severe impairments of "headaches,

---

[3]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375

back pain, depression and cognitive disorder." (A.R. 18).  An argument that the ALJ should have added a "pain disorder" to this list does not provide a basis for disturbing the Commissioner's decision.  The finding of a severe impairment at step 2 is a threshold determination.  The finding of a single severe impairment is enough and requires continuation of the sequential analysis.  *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  The ALJ's failure to find additional severe impairments at step 2 is "legally irrelevant."  *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).  The ALJ continued the sequential analysis and considered plaintiff's severe and non-severe impairments in making his factual finding regarding plaintiff's RFC.  (A.R. 17, 20-25).  His failure to list "pain disorder" at step 2 was legally irrelevant.

Plaintiff argues that the ALJ "ignored the diagnosis of a Pain Disorder from [] treating sources, the Consultative Examiner, as well as a determination of the District Office."  (*Id.* at 14) (citing TR. 272, 352, 362, 373).  The portions of the record cited by plaintiff do not correspond to any diagnosis of a pain disorder by a treating physician, and generally say nothing about a pain disorder:

---

F.3d 387, 390 (6th Cir. 2004).  Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity.  Next, the claimant must demonstrate that she has a 'severe impairment.'  A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.'  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.  The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work."  *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

- Page 272 is a progress note dated June 29, 2005, signed by a physician's assistant at East Michigan Family Care that says nothing about a pain disorder (A.R. 272);

- Page 352 is an excerpt form a psychiatric review technique form completed by a State Agency medical consultant finding that plaintiff did not have any listing-level mental impairment and that she was "capable of performing unskilled work."  It notes on October 3, 2006, a consultative examiner had offered a diagnosis of a pain disorder (A.R. 338, 341, 343, 350, 352);

- Page 362 is a "case development sheet," not a medical record (A.R. 362); and

- Page 373 is a report regarding a sleep study performed on September 13, 2007, and it says nothing about a pain disorder.  (A.R. 373).

On October 3, 2006, L. J. McCulloch, M.A., attempted to conduct a consultative examination.  (A.R. 327-34).  The psychologist found it difficult to interview plaintiff "due to her presentation of being in severe distress, bursting out in tears, putting her head down on the table and not responding, saying she can't remember things, saying she doesn't know to many questions, etc." (A.R. 327).  "She complains that she has problems with memory and anger and depression and crying and nervousness but can't give any chronology or background or won't."  (*Id.*).  The consultative psychologist offered a diagnosis of a pain disorder based on the few questions plaintiff answered.  (A.R. 331).  The ALJ did not ignore the results of the October 3, 2006 consultative examination, but recognized the examination's limited utility given plaintiff's failure to cooperate.  Plaintiff was "not entirely compliant with the interview."  (A.R. 19).  Plaintiff repeated the same pattern at her hearing and was "significant[ly] unresponsive to many questions regarding her limitations."  (A.R. 21; *see* A.R. 31-53).

The ALJ did not ignore the consultative psychologist's proffered diagnosis of a pain disorder.  The ALJ found that plaintiff's subjective complaints were not fully credible.  Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of

the ALJ.  *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  It is the ALJ's function to determine credibility issues.  *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).   The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528.  The court cannot substitute its own credibility determination for the ALJ's.  The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ."  *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005).  The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard.  This is a "highly deferential standard of review."   *Ulman v. Commissioner*, No. 11-2304, __ F.3d __, 2012 WL 3871353, at * 5 (6th Cir. Sept. 7, 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle."  *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005).  "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476.  "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773.  "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference."  *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009).  In this case there is overwhelming evidence supporting the ALJ's credibility determination (A.R. 20-25), including, among other things, the observations of plaintiff's medical care providers that she was

-12-

malingering in order to try to manufacture evidence in support of her claims for social security benefits.  (A.R. 22-25; *see*  451, 466, 472, 477, 479, 480, 481, 485, 486, 493).

### 3.

Plaintiff argues that the Commissioner "failed to consider the overwhelming functional evidence from treaters and examiners alike."  (Plf. Brief at 14).  She argues that the ALJ should have given greater weight to the global assessment of functioning (GAF) scores supplied by Nurse Practitioner Penny Downer and that the ALJ ignored the opinions expressed by Douglas W. Bentley, Ed.D., a consultative psychologist.  (Plf. Brief at 14-17).

GAF scores are subjective rather than objective assessments and are not entitled to any particular weight.  *See Kornecky v. Commissioner*, 167 F. App'x 496, 511 (6th Cir. 2006).  "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations."  *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009).  A GAF score is a subjective rather than an objective assessment.  *Id*.  "GAF is a clinician's subjective rating of an individual's overall psychological functioning.  A GAF score may help an ALJ assess mental RFC, but it is not raw medical data.  Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning."  *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n.7.  The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM-IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational

functioning."[4] *Kornecky*, 167 F. App'x at 511; *see Oliver v. Commissioner*, 415 F. App'x 681, 684 (6th Cir. 2011).  The ALJ found that plaintiff's overall unwillingness to participate in assessments created "great doubt" that plaintiff's low GAF scores reflected her true level of functioning.  (A.R. 24).

Further, Nurse Practitioner Downer is not an "acceptable medical source." See 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d); *see also Turner v. Astrue*, 390 F. App'x 581, 586 (7th Cir. 2010).  Only "acceptable medical sources" can:  (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule.  *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 1 (SSA Aug. 9, 2006)).  The opinions of a nurse practitioner fall within the category of information provided by "other sources."  *Id.* at * 2; *see* 20 C.F.R. §§ 404.1513(d), 416.913(d).  The social security regulations require that information from other sources be "considered."  2006 WL 2329939, at * 1, 4 (citing 20 C.F.R. §§ 404.1512, .1527, 416.912, .927).  This is not a demanding standard and was easily met here.  (A.R. 24).

On May 12, 2009, Psychologist Bentley conducted a consultative examination (A.R. 586) and offered opinions in support of plaintiff's claims for DIB and SSI benefits.  He stated that

---

[4]"Significantly, the SSA has refused to endorse the use of the GAF scale."  *Bennett v. Commissioner*, No. 1:07-cv-1005, 2011 WL 1230526, at * 3 (W.D. Mich. Mar. 31, 2011).  GAF scores "have no direct correlation to the severity requirements of the mental disorder listings." *DeBoard v. Social Security Admin.*, 211 F. App'x 411, 415 (6th Cir. 2006).

plaintiff was "markedly limited" in all but three categories of mental functioning (A.R. 584-85) and

that she was "totally disabled." (A.R. 582). Bentley's opinions were the opinions of a consultative

examiner, not a treating physician. *Kornecky v. Commissioner*, 167 F. App'x at 506; *see* 20 C.F.R.

§§ 404.1502, 416.902. His opinions were not entitled to any particular weight. *See Norris v.*

*Commissioner*, 461 F. App'x 433, 439 (6th Cir. 2012). The ALJ considered Psychologist Bentley's

opinions and gave a lengthy and detailed explanation why they were entitled to little weight:

> [S]ubsequent to the hearing, the claimant underwent psychological evaluation by Douglas
> Bentley, Ed.D., at the request of her attorney. Dr. Bentley assessed the claimant via the
> Minnesota Multiphasic Personality Inventory-2 (MMPI) and a clinical interview. He noted
> that the MMPI suggested schizophrenia and an organic brain injury and the test's validity
> scale suggested a person who presents in as confused and in a panic with psychosis. Dr.
> Bentley noted the claimant to report poor memory, unusual fears, hearing voices, suicidal
> ideation, and a history of rages. He noted that she presented as anxious, depressed, and with
> an unusual thought process. He diagnosed her with an organic brain injury leading to
> symptoms of schizophrenia and obsessive compulsive disorder (Exhibit 19F)[A.R. 581-86].
> Given the above recitation of evidence, the undersigned does not find the claimant's
> presentation to Dr. Bentley credible. No prior evidence has ever mentioned any obsessive
> compulsive behaviors and Dr. Bentley['s] description of his interview with the claimant is
> consistent with other assessments during which the claimant was thought to very likely be
> malingering. That the claimant underwent the assessment at the request of her attorney also
> calls into question her motivation in presenting herself in a highly limited way.
>
> * * *
>
> The opinion of Dr. Bentley that the claimant cannot maintain concentration or memory long
> enough to hold a job and that her panic, paranoia, delusional thinking as well as obsessive
> compulsive behavior preclude her ability to do any type of job is granted no weight (Exhibit
> 19F, page 4)[A.R. 582]. The undersigned first notes that the determination of disability is
> one reserved to the Commissioner of Social Security and Dr. Bentley's opinion of the
> claimant's ability to work is not within his area of expertise. The undersigned also notes
> that, as stated above, the claimant's presentation to Dr. Bentley o[n] the date of his
> examination is inconsistent with her overall presentation throughout the record and his
> examination on that single day is not indicative of her overall ability to perform basic work
> activities.

(A.R. 24). Judicial review of the Commissioner's final administrative decision does not encompass

re-weighing the evidence. *Mullins v. Secretary of Health & Human Servs.*, 680 F.2d 472 (6th

Cir.1982); *Reynolds v. Commissioner*, 424 F. App'x 411, 414 (6th Cir. 2011). "In formulating a residual functional capacity, the ALJ evaluates all the relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Commissioner*, No. 10–3820, 2012 WL 616661, at * 2 (6th Cir. Feb.27, 2012). Here, the ALJ considered Psychologist Bentley's opinions, determined that they were inconsistent with the administrative record, and found that they were entitled to no weight. Plaintiff's disagreement with the weight the ALJ found appropriate for Bentley's opinions does not provide a basis for overturning the Commissioner's decision.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:   September 17, 2012           /s/  Joseph G. Scoville_____
                                     United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).

-16-